The only methods of proving the handwriting of a person sanctioned by law are:
1. By a witness who saw him sign the very paper in dispute.
2. By one who has seen him write and has thereby (8) fixed a standard in his own mind by which he ascertains the genuineness of any other writing imputed to him.
3. By a witness who has received letters from the supposed writer of such a nature as renders it probable that they were written by the person from whom they purport to come. Such evidence is only admissible where there is good reason to believe that the letters from which the witness has derived his knowledge were really written by the supposed writer of the paper in question.
4. When a witness has become acquainted with his manner of signing his name by inspecting other ancient writings bearing the same signature, and which have been regarded and preserved as authentic documents. This mode of proof is confined to ancient writings, and is admitted as being the best the nature of the case will allow.
Other modes of proving handwriting not yet sanctioned by adjudged cases may possibly come within the reason of the cases enumerated, but I think they ought to appear clearly to do so *Page 5 
before they are admitted. The court ought to be well satisfied that the person who proves the signatures on a bank bill, without having seen the signers write or having been engaged in a correspondence with them, were from their situation and pursuits likely to acquire a correct knowledge on the subject; and, particularly, that they must have known of the return of those bills they believed to be genuine if they had been spurious. The first witnesses in this case only knew that they had received bills in the course of business which purported to be signed by the president and cashier of the Augusta bank; that they passed them away, andif they were genuine the note in question was counterfeit. What was the occupation of the witnesses, whether they were likely to receive many bills and to acquire an accurate knowledge of the signatures are facts to which no evidence is directed. They may have received counterfeit (9) bills which may yet return, for it is not said when they received and passed them away. Such evidence, I think, inadmissible, especially as it requires much experience and a more than ordinary skill to detect counterfeit signatures to bank-notes. The fraudulent ingenuity of men has brought this crime to such perfection that even the signers themselves have sometimes been imposed upon. Hence, before witnesses are allowed to give evidence to the jury, the court ought to be satisfied that they are skilled in the knowledge of bank-notes. The evidence of Erwin approaches very nearly to my conceptions of what is proper on such a question, and if I were certain that the verdict was founded on his evidence and not on that of the other witnesses I should hesitate in agreeing to a new trial; but, as some improper testimony has been admitted, a new trial must be awarded.